ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Yuwnus Warner,

                Plaintiff,

     -against-

City of New York,
New York City Police Department,
Officer Garner, — 81 precint
Officer "John Doe",

                Defendant(s).

AMON, CH.J.

BLOOM, M.J.

COMPLAINT

CV 12 - 2799

Jury Trial Demanded

BATTERY, POLICE BRUTALTIY, CIVIL RIGHTS 42 USC 1983

This is a police brutality case involving a police attack upon plaintiff.

I.     Plaintiff.

Plaintiff is YUWNUS WARNER, 571 Troy Avenue, Apt 1, Brooklyn, N.Y. 11203.

II.     Defendant(s).

1.     Defendant No. 1 is the City of New York.

2.     Defendant No. 2 is the New York City Police Department.

3.     Defendant No. 3 is Officer "Garner".

4.     Defendant No. 4 if Officer John Doe.

5.     The City is represented by Corporation Council, 100 Church St., New York, New York 10013.

JURISDICTION and VENUE

6.     In accordance with 28 U.S.C. 1331, this is a case involving the United States Constitution and federal laws or treaties this action is a federal question case.

7.     The basis for federal court Jurisdiction is: Federal question (42 U.S.C. 1983).



RECEIVED
MAY 31 2012
PRO SE OFFICE

8. The court has supplemental jurisdiction pursuant to 28 USC 1367 to hear plaintiff's state law claims because those claims are related to plaintiff's federal claims if any and are inextricably intertwined and arise out of a common nucleus of related facts.

9. This is the proper Court as plaintiff resides in Brooklyn.

## APPLICABLE STATUTORY PROVISION

10. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## ORIENTATION

11. Defendant's enforced the law while employed by New York City.

12. Defendants subjected, or caused to be subjected, plaintiff, a citizen of the United States, to a physical beating in a street and then within the 81st Precinct and then conducted protracted prosecution for criminal charges.

13. Plaintiff was injured.

14. The beating and the prosecution is a deprivation of rights, privileges, or immunities secured by the U.S. Constitution and federal laws.

15. At issue is Plaintiff's Civil Rights including but not exclusive to issue of police brutality and federal laws against unlawful incarceration and restraints from the pursuit of life and happiness.

III. The Complaint.

16. Yuwnus Warner ("plaintiff", "Mr. Warner" or "Warner" alternatively) alleges as follows:

17. Mr. Warner complains of an incident of police brutality.

18. Mr. Warner served a Notice of Intent to Sue the City of New York on or about March 1, 2011.

19. New York City held a 50-h hearing on or about April 12, 2012.

20. Mr. Warner is black.

21. Mr. Warner resides in Brooklyn, New York.

22. At all times during this incident, Police Defendant "Garner" was assigned to Brooklyn's 81st Precinct.

23. All other Police Defendants in this action reside or have their place of employment located in the State of New York.

24. At all times during this incident, these Police Defendants are assigned to Brooklyn's 81st Precinct.

25. The incident occurred May 7th, 2011 and continued thereafter.

26. Mr. Warner was walking his low-rider bicycle ("bicycle") on a sidewalk on Stuyvesant Street between Greene and Lexington Street in Brooklyn (the "location")

with a friend named Curtis Thorpe ("Curtis") on May 7, 2011 at approximately 2 o'clock in the afternoon.

27. Curtis and Mr. Warner just obtained some take-out food from a fish and chips fast food place on the corner of Lewis Avenue between Lafayette and Kosciusko Street.

28. Curtis and Mr. Warner proceeded along Lewis Avenue to Greene Avenue to go to Curtis's house to view a television presentation of a prize fight between Manny Pacquiao vs Timothy Bradley. Mr. Warner never made it to Curtis's house.

29. A uniformed police officer named "Garner" ("Officer Garner" or "Garner" alternatively) from Brooklyn's 81st Precinct ran from one side of the street to Mr. Warner's location.

30. Officer Garner placed his hand on Mr. Warner's bicycle and told Mr. Warner to stop. Mr. Warner stopped.

31. Officer Garner asked Mr. Warned for his identification.

32. Mr. Warner first asked why the officer wanted to see his identification.

33. Officer Garner said because, "You are riding your bicycle on the side walk."

34. Mr. Warner replied that he was walking his bicycle on the sidewalk.

35. Officer Garner said, "Work with me. Just let me see your ID."

36. Mr. Warner placed his identification - his New York State driver's license ID number 328713455 - in Officer Garner's hand.

37. Then, four additional uniformed police officers appeared at Mr. Warner's location.

38. Mr. Warner did not see where these officers came from. They simply appeared.

39. These officers surrounded Mr. Warner as Officer Garner backed up. Officer Garner took out his cellular telephone and called in to some office Mr. Warner's license number.

40. As he was doing this, the four officers began to ask Mr. Warner what he was doing there, where he lived and what he is doing here.

41. Mr. Warner did not respond.

42. After these four officers attempted to question Mr. Warner two more times, Mr. Warner told these four officers that he has nothing to say to these officers and that they have no reason to question him.

43. The four officers continued to question Mr. Warner whose patience grew thin.

44. Mr. Warner began to respond with the following: "You guys have nothing else better to do; I am a working citizen just like you guys; I am not a bad person; Don't you have criminals to go find instead of harassing me."

45. One officer told Mr. Warner that he should calm down. That "there is no reason to say what you are saying."

46. Officer Garner was still in the background on his cellular telephone.

47. Mr. Warner stopped talking. Then, Mr. Warner saw Officer Garner fill out a ticket.

48. Then Officer Garner approached Mr. Warner and gave Mr. Warner back his driver's license and a summons for the bicycle infraction: a court appearance for July 15, 2011. (The "bicycle incident" or "bicycle case" alternatively.)

49. Officer Garner smiled and said, "You are getting a summons for riding your bicycle on the street."

50. The officers walked away.

51. Mr. Warner got on his bicycle on the sidewalk.

52. Mr. Warner proceeded on his bicycle to catch up to Officer Garner and another officer to ask Officer Garner a question, "Do I have a pass for the day being that I have this summons in my pocket?"

53. Mr. Warner continued to ride his bicycle alongside Officer Garner and the other officer.

54. The officers are on Greene Avenue.

55. Mr. Warner is riding side by side with Officer Garner who says, "Yes smart ass. You are paying for the ticket so why not?"

56. Mr. Warner then said, "The same way that I am paying for your job which you are not doing correctly."

57. Then, Officer Garner stopped Mr. Warner by placing his hand on the handlebars of the bicycle.

58. When the bicycle stopped, Mr. Warner stood on his feet. Officer Garner bodily tackled Mr. Warner against a parked car and proceeded to punch Mr. Warner in his face while saying, "Do you think you are bad?" repeatedly.

59. Officer Garner kept punching Mr. Warner in his head and maintained a position to Mr. Warner's left side.

60. The second officer approached on Mr. Warner's right side.

61. The second officer placed his hand on his service weapon and Mr. Warner realized he was alone with the two officers - one punching him in his head and a second officer with his hand on his service weapon.

62. Officer Garner continued to hit Mr. Warner who is backing up away from Officer Garner.

63. Mr. Warner was rubbing himself against parked vehicles to evade the punches.

64. When Mr. Warner approached the corner, other officers entered the fight and proceeded to hit Mr. Warner all over his body with their feet, fists and objects such as their communications devices and their batons.

65. No one stopped until blood started to spew from Mr. Warner's head.

66. Once Mr. Warner felt blood coming from his head and people screaming hysterically, "Look what you did," Mr. Warner felt all hitting suddenly stop.

67. More people gathered at the scene and started to take photographs.

68. Police surrounded as if to protect from the crowd (to prevent the crowd from seeing what the police were doing) Mr. Warner and Officer Garner.

69. Then, the police took Mr. Warner to the 81st Precinct.

70. Mr. Warner remained quiet and in shock inside the police vehicle throughout the trip.

71. The police removed Mr. Warner from the police vehicle and continued to hit him inside of the Precinct building at the front desk.

72. At the front desk, an unidentified participating officer said out loud, "You like to hit cops? We're going to finish you right here. Stay still."

73. Police slammed Mr. Warner on the ground between the desk and a soda machine.

74. More police entered the precinct and joined in on the fight.

75. At this point Mr. Warner is screaming for his life.

76. Mr. Warner is yelling at the desk sergeant for help: the desk sergeant does nothing.

77. Another officer grabbed Mr. Warner by his right foot and dragged Mr. Warner to the rear of the precinct building.

78. That officer placed Mr. Warner in a cell with two other officers as guards.

79. Mr. Warner was bleeding and crying in the cell until internal affairs came and questioned Mr. Warner.

80. An ambulance came and took Mr. Warner to Woodhull Medical Center at 760 Broadway in Brooklyn for an examination that included a CAT scan on his head, an x-ray on his hand and stitches on his right eye.

81. Mr. Warner was prescribed pain killers and antibiotics.

82. After Woodhull Hospital, Mr. Warner was taken back to the precinct and released.

83. Mr. Warner came to his home and found two internal affairs business cards with notes for Mr. Warner to call internal affairs.

84. Mr. Warner called internal affairs and set up an appointment at his home to speak to internal affairs detectives about the bicycle incident.

85. Detective Himmelman met with Mr. Warner two days after his release (May 9th, 2011).

86. Mr. Warner described what happened. Mr. Warner identified Officer Garner and another officer by way of photographs provided by the detective.

87. Mr. Warner called the Civilian Complaint Review Board ("CCRB" or "agency" alternatively) shortly after May 9th, 2011.

88. Mr. Warner informed this agency of these events with Officer Garner and other officers and then met with private counsel for a civil law suit, Mr. Michael Lamingsoff, Esq.

89. The agency did nothing further on Mr. Warner's complaint.

90. Mr. Lamingsoff served a notice of intent to sue the city and the police department.

91. Between May 9, 2011 and December 1, 2011, Mr. Warner's public defender continued to adjourn the bicycle ticket prosecution awaiting information from internal affairs.

92. During that time, the case remained on the criminal court's calendar causing Mr. Warner to have to repeatedly return to criminal court.

93. The case is not proceeding to trial.

94. On or about November 30, 2011, under cover police officers from the 81st Precinct surrounded Mr. Warner in the street and accused him of having a Raven hand gun in his possession (the "charge" or "felony charge" alternatively).

95. The Brooklyn District Attorney (the "DA") filed a felony charge against Mr. Warner.

96. The DA is delaying trial on the felony charge.

97. The DA is not producing the weapon involved.

98. The DA is not producing the "investigation" the 81st Precinct conducted which gave rise to the aforesaid arrest.

99. The felony court judge is adjourning the case.

Claim 1: Battery Against All Defendants:

100. Plaintiff repeats and realleges all the preceding paragraphs.

101. Officer Garner and his group of police officers intentional struck plaintiff.

102. The officers struck plaintiff on and about plaintiff's head and face.

103. Plaintiff's head bled.

104. Plaintiff's head endured pain.

105. Plaintiff was dizzy and disoriented.

106. Plaintiff suffered damages.

Claim 2: Police Brutality/42 USC §1982 Against All Defendants

107. Plaintiff repeats and realleges all preceding paragraphs.

108. Officer Garner and his group of police officers were employed by the City to enforce the law.

109. The City, Officer Garner and his group of police officers subjected plaintiff to a repeated police beating without justification.

110. Officer Garner and his group of police officers are liable to plaintiff.

IV. The Injuries.

111.    Mr. Warner suffers from persistent headaches and is unable to obtain or maintain employment. Mr. Warner was humiliated and embarrassed publicly by Garner's beatings. Mr. Warner's civil rights were violated by Garner and the police.

V.    The Damages.

112.    The items of damage or injuries claimed are: lost earnings arising out of the beatings; punitive and exemplary damages; injunctive relief that police stop beatings of detainees.

WHEREFORE, plaintiff prays for judgment against all defendants as follows:

a. Plaintiff prays for a declaration that all defendants violated his civil rights under 42 USC 1983.

b. That defendant's acted under color of statute, ordinance, regulation, custom, or usage of New York State.

c. That defendants subjected, or caused to be subjected, plaintiff, a citizen of the United States, to a physical beating in a street and then within the 81st Precinct and then conducted protracted prosecution for criminal charges.

d. That plaintiff was injured.

e. That the beating and the prosecution is a deprivation of rights, privileges, or immunities secured by the U.S. Constitution and federal laws.

f. That defendant's shall be liable to the plaintiff.

g. Plaintiff prays for compensatory damages equal to the present value of lost earnings arising out of the beatings;

h. Plaintiff prays for exemplary damages against defendants for $1,000,000.00 jointly and severally.

i. Plaintiff prays for injunctive relief that police and the City of New York refrain from beating detainees.

I declare under penalty of perjury that the foregoing is true and correct.
Signed this ____ day of May, 2012.

_____
YUWNUS WARNER

1347-572-0396
5/30/12
31   yw