UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------- }  Index No.: 12 CV 2799 (CBA)(LB)
YUWNUS WARNER,                       }
                                     }
                                     )
        -against-                    }
                                     )    **FIRST AMENDED COMPLAINT**
                                     }
                                     )
OFFICER GARNER, OFFICER VINCENT      )
DEJOSEPH , OFFICER TYRON SAXXON,     }
                 Defendants.)
----------------------------------- }

Plaintiff by his counsel complains of the Defendants as follows:

### NATURE OF THE ACTION

1. The case is about state actors abusing litigants' constitutional rights because they are motivated by brutality, turning justice into a chamber of horrors. A federal investigation is warranted as the state actors knowingly refuse to fix an ailing policing system.

2. This action seeks damages from the aforesaid state actors for attacking and battering plaintiff *en masse* in a street in public view before a crowd of onlookers therefore subjecting him to injury and pain -- cruel and unusual punishment outside the confines of the law.

3. Police then fictionalized charges against plaintiff and arrested him for crimes he did not commit. Prosecutors refuse to give plaintiff a trial after passage of three years.

-1-

4. Plaintiff's recourse to Internal Affairs was futile because the state actors falsely reported that plaintiff beat them up.

5. The Internal Affairs stack of papers exonerating plaintiff was taller than plaintiff's stack inculpating the police defendants.

6. Numerous police officers pounced on defendant and then went to hospitals to show that plaintiff injured them when it was plaintiff who was battered severely not once but twice -- once in the street and again at their precinct.

7. Moreover, nearly one year later, police planted a pistol on the body of the plaintiff intending to entrap plaintiff in a second false arrest.

8. This prosecution further delayed resolution and the prosecutor later withdrew these charges.

9. Any reasonable person knows that three years of adjournments is intrusive, punitive and abusive.

PARTIES

10.    Plaintiff YUWNUS WARNER is an individual, a U.S. citizen and resides at 571 Troy Avenue, Apt 1, Brooklyn, N.Y. 11203, domiciled in New York City and is the injured party in this action.

11.    At all times relevant, Defendant Officer GARNER, is an individual who is a New York City Police Department police officer. Defendant GARNER is a state actor for purposes of

-2-

liability under 42 USC Sec. 1983 et seq. He is sued in his official capacity as a police officer in the City of New York and individually. As a state actor, Defendant GARNER receives training from the state and city and is obligated to act consistent with his training.

12.     Upon information and belief, at all times relevant, Defendant GARNER was an employee of the police department and paid as a police officer to uphold the law.

13.     At all times relevant, Defendant Officer DEJOSEPH is an individual who is a New York City Police Department police officer. Defendant DEJOSEPH is a state actor for purposes of liability under 42 USC Sec. 1983 et seq. He is sued in his official capacity as a police officer in the City of New York and individually. As a state actor, Defendant DEJOSEPH receives training from the state and city and is obligated to act consistent with his training.

14.     Upon information and belief, at all times relevant, Defendant DEJOSEPH was an employee of the police department and paid as a police officer to uphold the law.

15.     At all times relevant, Defendant Officer SAXXON is an individual who is a New York City Police Department police officer. Defendant Officer SAXXON is a state actor for purposes of liability under 42 USC Sec. 1983 et seq. He is sued in his official capacity as a police officer in the City of New York and individually. As a state actor,

-3-

Defendant SAXXON receives training from the state and city and is obligated to act consistent with his training.

16.    Upon information and belief, at all times relevant, Defendant Officer SAXXON was an employee of the police department and paid as a police officer to uphold the law.

## JURISDICTION AND VENUE

17.    Federal jurisdiction exists pursuant to Article III §2 which extends jurisdiction to cases arising under the Constitution of the United States.

18.    Jurisdiction is conferred on this Court by 28 U.S.C. §1343(3) and (4), which provide for original jurisdiction in this court of all suits brought pursuant to 42 U.S.C. §1983 and 28 U.S.C. §1331 conferring original jurisdiction to redress federal constitutional violations under color of state law, and 42 U.S.C. §1983 civil rights violations.

19.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391(b) and 18 U.S.C. §1965(a) and (b) because all or substantially all of the events giving rise to the present action occurred with the Eastern District of New York.

20.    Declaratory relief is available pursuant to 28 U.S.C. §§2201 and 2202.

21.    Relief from this Court is the last resort as relief in state courts is futile where state criminal court and appellate court make it impossible to get relief with their

-4-

inconsistent and irrational decisions that appear to protect a dysfunctional system than basic civil rights, as alleged herein.

22.    Plaintiff is neither challenging nor appealing a state court decision from defendants as state actors.

FACTS

THE BICYCLE CHARGE

23.    Yuwnus Warner ("plaintiff", "Mr. Warner" or "Warner" alternatively) alleges as follows:

24.    Mr. Warner complains of an incident of police brutality.

25.    Mr. Warner served a Notice of Intent to Sue the City of New York on or about March 1, 2011.

26.    New York City held a 50-h hearing on April 12, 2012.

27.    Mr. Warner is black.

28.    Mr. Warner resides in Brooklyn, New York.

29.    At all times during this incident, Police Defendant "Garner" was assigned to Brooklyn's 81st Precinct.

30.    All other Police Defendants in this action reside or have their place of employment located in the State of New York.

31.    At all times during this incident, these Police Defendants are assigned to Brooklyn's 81st Precinct.

32.    The incident occurred May 7th, 2011 and continued thereafter.

PETER C. LOMTEVAS, ESQ., P.C.
*Attorney at Law*
www.lomtevas.com

33.    Mr. Warner was walking his low-rider bicycle ("bicycle") on a sidewalk on Stuyvesant Street between Greene and Lexington Street in Brooklyn (the "location") with a friend named Curtis Thorpe ("Curtis") on May 7, 2011 at approximately 2 o'clock in the afternoon.

34.    Curtis and Mr. Warner just obtained some take-out food from a fish and chips fast food place on the corner of Lewis Avenue between Lafayette and Kosciusko Street.

35.    Curtis and Mr. Warner proceeded along Lewis Avenue to Greene Avenue to go to Curtis's house to view a television presentation of a prize fight between Manny Pacquiao vs Timothy Bradley. Mr. Warner never made it to Curtis's house.

36.    A uniformed police officer named "Garner" ("Officer Garner" or "Garner" alternatively) from Brooklyn's 81st Precinct ran from one side of the street to Mr. Warner's location.

37.    Officer Garner placed his hand on Mr. Warner's bicycle and told Mr. Warner to stop. Mr. Warner stopped.

38.    Officer Garner asked Mr. Warned for his identification.

39.    Mr. Warner first asked why the officer wanted to see his identification.

40.    Officer Garner said because, "You are riding your bicycle on the side walk."

PETER C. LOMTEVAS, ESQ., P.C.
Attorney at Law
www.lomtevas.com

41.    Mr. Warner replied that he was walking his bicycle on the sidewalk.

42.    Officer Garner said, "Work with me. Just let me see your ID."

43.    Mr. Warner placed his identification - his New York State driver's license ID number 328713455 - in Officer Garner's hand.

44.    Then, four additional uniformed police officers among whom were DEJOSEPH AND SAXXON and others yet unidentified appeared at Mr. Warner's location.

45.    Mr. Warner did not see where these officers came from. They simply appeared.

46.    These officers surrounded Mr. Warner as Officer Garner backed up. Officer Garner took out his cellular telephone and called in to some office Mr. Warner's license number.

47.    As he was doing this, the four officers began to ask Mr. Warner what he was doing there, where he lived and what he is doing here.

48.    Mr. Warner did not respond.

49.    After these four officers attempted to question Mr. Warner two more times, Mr. Warner told these four officers that he has nothing to say to these officers and that they have no reason to question him.

50.    The four officers continued to question Mr. Warner whose patience grew thin.

PETER C. LOMTEVAS, ESQ., P.C.
Attorney at Law
www.lomtevas.com

51.   Mr. Warner began to respond with the following: "You guys have nothing else better to do; I am a working citizen just like you guys; I am not a bad person; Don't you have criminals to go find instead of harassing me."

52.   One officer told Mr. Warner that he should calm down. That "there is no reason to say what you are saying."

53.   Officer Garner was still in the background on his cellular telephone.

54.   Mr. Warner stopped talking. Then, Mr. Warner saw Officer Garner fill out a ticket.

55.   Then Officer Garner approached Mr. Warner and gave Mr. Warner back his driver's license and a summons for the bicycle infraction: a court appearance for July 15, 2011. (The "bicycle incident" or "bicycle case" alternatively.)

56.   Officer Garner smiled and said, "You are getting a summons for riding your bicycle on the street."

57.   The officers walked away.

58.   Mr. Warner got on his bicycle on the sidewalk.

59.   Mr. Warner proceeded on his bicycle to catch up to Officer Garner and another officer to ask Officer Garner a question, "Do I have a pass for the day being that I have this summons in my pocket?"

60.   Mr. Warner continued to ride his bicycle alongside Officer Garner and the other officer.

61.   The officers are on Greene Avenue.

-8-

62.     Mr. Warner is riding side by side with Officer Garner who says, "Yes smart ass. You are paying for the ticket so why not?"

63.     Mr. Warner then said, "The same way that I am paying for your job which you are not doing correctly."

64.     Then, Officer Garner stopped Mr. Warner by placing his hand on the handlebars of the bicycle.

65.     When the bicycle stopped, Mr. Warner stood on his feet. Officer Garner bodily tackled Mr. Warner against a parked car and proceeded to punch Mr. Warner in his face while saying, "Do you think you are bad?" repeatedly.

66.     Officer Garner kept punching Mr. Warner in his head and maintained a position to Mr. Warner's left side.

67.     The second officer approached on Mr. Warner's right side.

68.     The second officer placed his hand on his service weapon and Mr. Warner realized he was alone with the two officers - one punching him in his head and a second officer with his hand on his service weapon.

69.     Officer Garner continued to hit Mr. Warner who is backing up away from Officer Garner.

70.     Mr. Warner was rubbing himself against parked vehicles to evade the punches.

71.     When Mr. Warner approached the corner, other officers entered the fight and proceeded to hit Mr. Warner all over

-9-

his body with their feet, fists and objects such as their communications devices and their batons.

72.    No one stopped until blood started to spew from Mr. Warner's head.

73.    Once Mr. Warner felt blood coming from his head and people screaming hysterically, "Look what you did," Mr. Warner felt all hitting suddenly stop.

74.    More people gathered at the scene and started to take photographs.

75.    Police surrounded as if to protect from the crowd (to prevent the crowd from seeing what the police were doing) Mr. Warner and Officer Garner.

76.    Then, the police took Mr. Warner to the 81st Precinct.

77.    Mr. Warner remained quiet and in shock inside the police vehicle throughout the trip.

78.    The police removed Mr. Warner from the police vehicle and continued to hit him inside of the Precinct building at the front desk.

79.    At the front desk, an unidentified participating officer said out loud, "You like to hit cops? We're going to finish you right here. Stay still."

80.    Police slammed Mr. Warner on the ground between the desk and a soda machine.

81.    More police entered the precinct and joined in on the fight.

-10-

82.     At this point Mr. Warner is screaming for his life.

83.     Mr. Warner is yelling at the desk sergeant for help: the desk sergeant does nothing.

84.     Another officer grabbed Mr. Warner by his right foot and dragged Mr. Warner to the rear of the precinct building.

85.     That officer placed Mr. Warner in a cell with two other officers as guards.

86.     Mr. Warner was bleeding and crying in the cell until internal affairs came and questioned Mr. Warner.

87.     An ambulance came and took Mr. Warner to Woodhull Medical Center at 760 Broadway in Brooklyn for an examination that included a CAT scan on his head, an x-ray on his hand and stitches on his right eye.

88.     Mr. Warner was prescribed pain killers and antibiotics.

89.     After Woodhull Hospital, Mr. Warner was taken back to the precinct and released.

90.     Mr. Warner came to his home and found two internal affairs business cards with notes for Mr. Warner to call internal affairs.

91.     Mr. Warner called internal affairs and set up an appointment at his home to speak to internal affairs detectives about the bicycle incident.

PETER C. LOMTEVAS, ESQ., P.C.
*Attorney at Law*
www.lomtevas.com

92.    Detective Himmelman met with Mr. Warner two days after his release (May 9th, 2011).

93.    Mr. Warner described what happened. Mr. Warner identified Officer Garner and another officer by way of photographs provided by the detective.

94.    Mr. Warner called the Civilian Complaint Review Board ("CCRB" or "agency" alternatively) shortly after May 9th, 2011.

95.    Mr. Warner informed this agency of these events with Officer Garner and other officers and then met with private counsel for a civil law suit, Mr. Michael Lamingsoff, Esq.

96.    The agency did nothing further on Mr. Warner's complaint.

97.    Mr. Lamingsoff served a notice of intent to sue the city and the police department.

98.    Between May 9, 2011 and December 1, 2011, Mr. Warner's public defender continued to adjourn the bicycle ticket prosecution awaiting information from internal affairs.

99.    During that time, the case remained on the criminal court's calendar causing Mr. Warner to have to repeatedly return to criminal court.

100.    Adjourn dates since substitute counsel took over plaintiff's representation were:

a. Thursday, January 19, 2012, Monday, February 6, 2012, Thursday, March 8, 2012, Thursday, March 29, 2012,

-12-

Wednesday, April 18, 2012, Monday, April 30, 2012, Wednesday, May 30, 2012, Thursday, July 26, 2012, Tuesday, July 31, 2012, Thursday, August 9, 2012, Wednesday, September 5, 2012, Monday, October 1, 2012, Wednesday, October 17, 2012, Tuesday, November 13, 2012, Tuesday, December 18, 2012, Wednesday, January 23, 2013, Wednesday, February 13, 2013, Tuesday, April 9, 2013, Friday, June 1, 2012, Tuesday, September 17, 2013, Thursday, November 14, 2013. The next adjourn date as of the time of the writing of this complaint is Tuesday, January 14, 2014.

101.    The case is not proceeding to trial.

### THE GUN CHARGE

102.    On or about November 30, 2011, under cover police officers from the 81st Precinct, the same precinct of the police defendants herein surrounded Mr. Warner in the street and accused him of having a serial number 1603685 Raven Arms Model MP-25 in his possession (the "charge" or "felony charge" alternatively).

103.    The Brooklyn District Attorney (the "DA") filed a felony charge against Mr. Warner.

104.    The DA later dismissed that felony charge.


COUNT I: FOURTEENTH AMENDMENT VIOLATION AND STATE TORT (ASSAULT/BATTERY) - 42 U.S.C. §1983 - ALL DEFENDANTS

PETER C. LOMTEVAS, ESQ., P.C.
Attorney at Law
www.lomtevas.com

105.    Plaintiff repeates and realleges each of the foregoing paragraphs as if alleged anew.

106.    Section 1983 of Title 42 of the United States Code states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

107.    The Fourteenth Amendment guarantees that no state shall interfere with a citizen's right to due process in the courts before the courts interfere with a citizen's right.

-14-

108.    Defendants deprived plaintiff of his federal

    substantive and procedural due process rights in criminal

    court by beating him up en masse in the street and in the

    81st Precinct, denying him access to the court, denying him

    a trial before interfering with his constitutional right to

    be free of beatings.

109.    Plaintiff has a right to walk the streets of New York

    City free of physical attack by police.

110.    All of these acts were done deliberately, maliciously

    and with willful indifference to plaintiff's protected

    rights under state and federal laws and procedures which is

    obvious, and defendants continue their misconduct to

    interfere with plaintiff's rights to due process.


COUNT II: SUBSTANTIVE AND PROCEDURAL DUE PROCESS VIOLATIONS -

42 U.S.C. §1983 - ALL DEFENDANTS


111.    Plaintiff repeats and realleges each of the foregoing

    paragraphs as if alleged anew.

112.    Regardless of the proper procedures, defendants as

    state actors abused their government authority to violate

    plaintiff's fundamental rights when no overriding important

    state interest justified those infringements.

113.    Defendants interfered with plaintiff's right to be

    free of physical assault because they are motivated by

-15-

malice and are accustomed to interfering with citizen's rights to due process because they know they can get away with it as long as they support each other where the criminal litigant does not have the resources to protect their liberty interests.

114.    The foregoing violations of plaintiff's rights amounted to constitutional torts and were affected by actions taken under color of State law, and within the scope of the defendant's employment and defendants committed the foregoing violations of plaintiff's rights knowingly, intentionally, willfully, recklessly, negligently and or with deliberate indifference to plaintiff's constitutional rights or to the effect of such misconduct upon plaintiff's constitutional rights.

115.    By reason of the foregoing, defendants are liable to plaintiff pursuant to 42 U.S.C. §1983 for compensatory and for punitive damages.


COUNT III: FOURTH AND FOURTEENTH AMENDMENT - ABUSE OF PROCESS - 42 U.S.C. §1983 - ALL DEFENDANTS


116.    Plaintiff repeats and realleges each of the foregoing paragraphs as if alleged anew.

117.    Defendant police officers, employed a regularly issued legal process in the form of criminal prosecution adverse

-16-

to the interests of plaintiff compelling him to pay for legal representation and loss of time from work against his will, to his financial detriment and over his objection.

118.   Despite defendant police officers fictionalizing the May 7th, 2011 factual account since then as alleged herein above that interfered, they changed and denied the freedoms and liberty interests factual allegations that are patently false and a deliberate material misrepresentation as there is no basis for state actors to actually and constantly interfere with the rights of plaintiff for over three years under the guise of a prosecution.

119.   Defendant police officers falsely charged plaintiff by fictionalizing his charges and then refuse to come to trial to testify for three years abusing the criminal process.

120.   Defendants did the aforesaid acts with the intent to do harm without excuse or justification, and in order to obtain a collateral objective that is outside the legitimate ends of the process wherein defendant police officers wanted to punish plaintiff by beating him twice and then falsely charging him for beating them and then delaying trial because plaintiff filed an Internal Affairs complaint. Defendants took a biased position against plaintiff to use the court process in ways it was not intended to secure, including violating plaintiff's rights to be free of malicious prosecution under the Fourth and

-17-

Fourteenth Amendments of the United States Constitution, and unlawfully interfering with plaintiff's rights to liberty and due process, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

121.    Defendants, individually, in concert with, and/or aiding and betting one another and other persons for whose acts they are liable, employed regularly issued legal process against plaintiff by all said actions alleged herein above.

122.    All said actions were commenced and continued through false representations of fact and without due process or even following substantive law by defendants.

123.    Defendants used such process in a perverted manner to obtain a collateral objective outside the legitimate ends of the process used, namely, to gain unlawful, coercive means over plaintiff to force him to pay counsel fees of numerous court appearances that lead to adjournments for patently false allegations.

124.    Defendants used such process in a perverted manner to obtain a collateral objective outside the legitimate ends of the process used, namely, to gain unlawful, coercive means over plaintiff to intimidate him into taking a plea for crimes the police committed upon plaintiff and creating a status quo of protracting the case and unlawfully

-18-

creating investigative files further fictionalizing the police account of the events of May 7th, 2011.

125.    Defendants did the above with intent to harm plaintiff, with actual malice, and without excuse or justification.

126.    By virtue of the foregoing, plaintiff was caused actual and special damages.

COUNT IV: MALICIOUS PROSECUTION UNDER STATE LAW - ALL DEFENDANTS

127.    Plaintiff repeates and realleges each of the foregoing paragraphs as if alleged anew.

128.    Defendants acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued, and/or caused the initiation or continuation of, criminal proceedings against Plaintiff.

129.    The criminal proceedings terminated in Plaintiffs favor.

130.    There was no probable cause for the commencement or the continuation of the criminal proceedings.

131.    The Defendants acted with actual malice.

COUNT V: STATE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - ALL DEFENDANTS

-19-

132.    Plaintiff repeats and realleges each of the foregoing paragraphs as if alleged anew.

133.    Defendants engaged in extreme and outrageous conduct directed at Plaintiff.

134.    Defendants engaged in conduct with an intention to cause, or in reckless disregard of the substantial probability that it would cause, Plaintiff severe emotional distress.

135.    Specifically, defendants, individually, in concert with, conspiring with, and/or aiding and abetting one another and other persons for whose acts they are liable, while acting in an investigative or administrative capacity, made false official statements to be used against Plaintiff, created false official records to be used against Plaintiff, initiated or caused the initiation and continuation of false and unfounded criminal charges against Plaintiff while lacking probable cause to do so and abused judicial process in order to gain unlawful custody of Plaintiff.

136.    Plaintiff suffered severe emotional distress as a result of, and that was proximately caused by, the Defendants' aforementioned actions.

137.    By virtue of the foregoing, Plaintiff suffered the actual damages.

-20-

COUNT VI: STATE NEGLIGENT MISREPRESENTATION - ALL DEFENDANTS

138.    Plaintiff repeats and realleges each of the foregoing paragraphs as if alleged anew.

139.    Defendants had a duty, as a result of their special relationship with Plaintiff, to give Plaintiff and others correct information.

140.    Defendants made false representations to Plaintiff and others that Defendants should have known were incorrect, including, but not limited to, the false representations that Plaintiff physically assaulted Defendants.

141.    Defendants' false representations were made for the purpose of inducing other parties, including Plaintiff, prosecutors, and State criminal court, to rely upon such false representations.

142.    Defendants knew that the information supplied in their representations was desired by Plaintiff, and others, for a serious purpose, specifically, to challenge Defendant's allegations.

143.    Plaintiff and others, including prosecutors, and State criminal court, intended to rely and act upon Defendants' representations, and did in fact reasonably rely on those representations, in ignorance of the falsity of such representations.

-21-

144.    Defendants' aforementioned conduct caused or perpetuated Plaintiffs injuries by causing the wrongful continuation of his criminal prosecution, and his related damages, by causing him to incur substantial legal fees, by depriving him of the employment income he would have been able to earn had he not been prosecuted.

COUNT VII: DEFENDANT POLICE OFFICERS ACTED WITHOUT AUTHORITY – ALL DEFENDANTS

145.    Plaintiff repeats and realleges each of the foregoing paragraphs as if alleged anew.

146.    Defendant police officer's pattern of deliberate interference with plaintiff's constitutional rights proceeded out of malice, prejudice and bias in violation of his constitutional rights.

147.    Defendant police officers abused their authority by fictionalizing their physical attack of the plaintiff in the streets of Brooklyn and then again at their precinct.

148.    Defendant police abused their authority by falsely arresting plaintiff.

149.    Defendant police officers fictionalized the encounter by going to hospitals to create the appearance that plaintiff attacked them.

-22-

150.    Defendants did the above with intent to harm plaintiff, with actual malice, and without excuse or justification.

151.    By virtue of the foregoing, plaintiff was caused actual and special damages.

COUNT VIII: ACTUAL & CONSTRUCTIVE FRAUD UNDER STATE LAW – ALL DEFENDANTS

152.    Plaintiff repeats and realleges each of the foregoing paragraphs as if alleged anew.

153.    Defendants made representations of material fact which were false, and known to be false by Defendants, for the purpose of inducing other parties, including plaintiff, to rely upon such false representations, and the other parties did so rely, either out of ignorance or deliberately, thereby causing plaintiff's injuries alleged herein below.

154.    Specifically, Defendants made, caused to be made, acted in concert or conspired to make, and/or aided and abetted one another to make representations as to material facts which were false, and known to be false by Defendants, to wit, the representations alleged herein by defendant police officers regarding the occurrence of May 7th, 2011, as well as all other above alleged false statements and filings constitute fraud.

-23-

155.    The aforementioned statements alleged herein made by defendants personally and/or at their direction, were known by them to be false or misleading or were made with deliberate indifference to their truth or falsity or to their misleading nature.

156.    The statements were made by Defendants (or at their direction) for the purpose of inducing other parties, including various courts, defendants' supervisors, and/or plaintiff, to rely upon such false representations, and such parties rightfully did rely, in ignorance of the falsity of such representations, and to plaintiff's detriment.

157.    Defendants had a fiduciary, confidential and special relationship with and duty to plaintiff arising out of their special status under the law as officers of the law, the absolute deference and trust that courts give to their factual representations concerning their positions as police, all of which said defendants instead chose to commit fraud, and they violated their strict duty under the Constitution and the laws of the United States and the State of New York to fully and accurately disclose facts, and plaintiff as defendant in the criminal court that said defendants operate in have an entitlement to rely upon the accuracy and completeness of such disclosures, to make accurate and complete disclosures so plaintiff would not be

-24-

misled as the existence or nonexistence of such facts and laws and whether to file legal action for redress of violations of their constitutional rights because Defendants conceal and violate Plaintiffs' rights by using fraud.

158.   Plaintiff as defendant in the criminal court that said Defendants operate in are entitled to rely, and foreseeably did rely, upon Defendants to faithfully carry out their aforementioned duties and present facts, not frauds in a court of law.

159.   Defendants conduct caused or perpetuated plaintiff's injuries and damages as alleged herein and below by knowingly, willfully, intentionally, recklessly and/or negligently depriving them, or delaying acquisition, of information to which they were legally entitled and by causing them to believe that such information did not exist and resultantly causing them to remain in their court system for over three years while the Defendants' frauds were used to injure plaintiff.


COUNT IX: DECLARATORY RELIEF & INJUNCTION - ALL DEFENDANTS


160.   Plaintiff repeats and realleges each of the foregoing paragraphs as if alleged anew.

PETER C. LOMTEVAS, ESQ., P.C.
*Attorney at Law*
www.lomtevas.com

161.    The damage to plaintiff by all actions of the state
actors in this unconstitutional way, among other abuses
suffered by plaintiff, is emotionally and financially
irreparable.

162.    Plaintiff demands a preliminary and permanent
injunction against future false arrests and physical
attacks, declaratory relief and damages for his other
causes of action.


INJURIES/DAMAGES AS TO ALL COUNTS


163.    As a result of Defendants' actions and their
deliberate indifference to plaintiff's constitutional
rights, plaintiff suffered pain, beating, lost wages,
nearly three years of criminal court appearances with no
trial or dismissal, incurred medical and legal fees and
other expenses, plaintiff suffered the constitutional
violations as alleged herein and loss of liberty and
plaintiff suffered extreme humiliation, pain and suffering,
terror and mental anguish, of which are irreparable damages
continuing to date, as well as other damages continuing as
Defendants continue their violations of plaintiff's rights
alleged herein.

PETER C. LOMTEVAS, ESQ., P.C.
*Attorney at Law*
www.lomtevas.com

WHEREFORE, Plaintiff prays for following relief, jointly and severally, against Defendants:

a. That the aforesaid conduct of Defendants be adjudged and declared to have been in violation of plaintiff's constitutional rights with judgment entered for Plaintiff with the costs of this action, including reasonable attorneys' fees;

b. That the aforesaid conduct of Defendants be adjudged and declared to have been in violation of the common law and statutes of New York and other states, and that judgment be entered for plaintiff for the amount of damages determined to have been sustained by them or as otherwise allowed by law;

c. Granting an injunction against Defendants from continuing their unconstitutional conduct, namely attacking citizens in the streets, fictionalizing those encounters, then covering for each other by offering false facts in their defense and maintaining criminal cases with little to no chance of disposition on the merits;

d. Awarding plaintiff compensatory damage of not less than ONE MILLION DOLLARS;

d. Awarding Plaintiffs punitive damages of not less than ONE MILLION DOLLARS to punish Defendants and deter them from future misconduct;

e. Awarding plaintiff interest on all causes of action from the date May 7th, 2011, the date plaintiff suffered his first

PETER C. LOMTEVAS, ESQ., P.C.
*Attorney at Law*
www.lomtevas.com

contact with defendants because since that date he has never received a trial and was abused in the process for over three years;

f. Awarding plaintiff reasonable attorney fees pursuant to 42 U.S.C. 1988 and to the inherent powers of this Court; and

g. Such other, further and different relief as the Court may deem just and proper.


Dated:      Brooklyn, New York
            December 24th, 2013

                                    _____
                                    PETER C. LOMTEVAS, ESQ.
                                    1248 85th Street
                                    Brooklyn, NY 11228
                                    (718) 745-3600, fax (718) 745-4900
                                    peter@lomtevas.com
                                    PL-1366

PETER C. LOMTEVAS, ESQ., P.C.
*Attorney at Law*
www.lomtevas.com